UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MICHELE SHELNUTT,<br><br>               Plaintiff,<br><br>v.<br><br>SYNCHRONY BANK,<br><br>               Defendant. | Case No. 6:20-cv-00539<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. TCPA, 47 U.S.C. §227<br>2. FCCPA, Fla. Stat. §559.55 *et seq*.<br>3. Invasion of Privacy - Intrusion Upon Seclusion |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michele Shelnutt ("Michele"), by and through her attorneys, alleges the following against Defendant Synchrony Bank ("Defendant" or "Synchrony").

## INTRODUCTION

1. Count I of Michele's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Michele's Complaint is based upon the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §559.55 *et seq*. The FCCPA is a Florida statute that regulates the collection of debts within the state by debt collectors

and original creditors. The FCCPA provides relief additional to the TCPA.

3. Count III of Michele's Complaint is based upon the Invasion of Privacy - Intrusion upon Seclusion, as derived from §652B of the Restatement (Second) of Torts. §652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . that would be highly offensive to a reasonable person."

## JURISDICTION AND VENUE

4. Jurisdiction of the court arises under 28 U.S.C. §§1331, 1332, 1367, and 47 U.S.C. §227.

5. Diversity jurisdiction is established under 28 U.S.C. §1332 as the matter in controversy exceeds $75,000.00, Michele is a Florida citizen, and Synchrony is a Utah citizen.

6. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

7. Synchrony transacts business here; therefore, personal jurisdiction is established.

## PARTIES

8. Michele is a natural person residing in Melbourne, Brevard County, FL.

9. Michele is a "consumer" as defined by Fla. Stat. §559.55(8).

10. Synchrony is a "creditor" as defined by Fla. Stat. §559.55(5), and a Utah

entity with its principal place of business located at 170 West Election Road, Suite 125, Draper, UT 84020.

11. Synchrony acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

12. Synchrony is attempting to collect a debt from Michele. The debt qualifies as a "consumer debt" under the FCCPA because it arose out of a transaction in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes.

13. In or around April 2019, Synchrony began calling Michele at her cellular telephone number, ending in 9947, in an attempt to collect the alleged debt.

14. The calls originated from the following numbers: (330) 280-5508; (407) 541-5229; (770) 238-1942; (972) 512-3475; and (770) 283-1535.

15. Upon information and belief, these numbers are owned or operated by Synchrony.

16. On or about April 19, 2019, Michele answered a call from Synchrony. After picking up, Michele heard an unusually long delay before the representative began speaking, consistent with the use of an automated telephone dialing system.

17. After properly identifying herself, Michele was informed by

Synchrony's representative that Synchrony was attempting to collect a debt incurred by Michele under a JCPenney account.

18. During that call, Michele explained that she did not have a job from July 2018 until November 2018, and therefore she did not have money to pay Synchrony.

19. Also, Michele unequivocally revoked consent for Synchrony to call her cellular phone, and instructed Synchrony to communicate with her by email.

20. Michele also promised that she would call Synchrony once she was able to make a payment.

21. Despite Michele expressly informing Synchrony not to call her and that she could not pay at the time, Synchrony began a harassment campaign by calling Michele on her cellular phone virtually every day, including on the weekends, and multiple times a day.

22. Upon information and belief, Michele answered calls and revoked consent to be called on her cellular phone on several other times.

23. Between April 19 and May 25, 2019, Synchrony contacted Michele on her cellular phone no less than **ONE HUNDRED AND THIRTY-FIVE (135)** times *after* she revoked consent to be called on her cellular phone.

24. Synchrony called Michele virtually every day, multiple times a day.

25. Synchrony even called Michele on the weekends. For example, on Saturday, May 18, 2019, Synchrony called Michele seven (7) times in one day. On

Sunday, May 19, 2019, Synchrony called Michele four (4) times in one day, totaling eleven (11) calls in one weekend alone.

26. Synchrony called Michele **122 times in a 31-day period**.

27. Synchrony called Michele as early as 8 am and as late as 8 pm.

28. Synchrony called from several different phone numbers that Michele could not recognize, making it appear to her that several debt collectors were targeting her, and making it hard for her to screen the calls she was receiving.

29. The timing, number, and pattern of Defendant's calls to Michele are consistent with the use of an automated telephone dialing system.

30. On July 24, 2019, in response to varying district court opinions, the US House of Representatives passed H.R. 3375 by a vote of 429-3. The House intended to clear up any ambiguity with the TCPA and made it clear that the TCPA covers systems that call consumers from a stored list.

31. H.R. 3375 further clarified that a consumer may revoke consent, even consent given in a contract.

32. Defendant is familiar with the TCPA and FCCPA.

33. Upon information and belief, Synchrony intentionally called Michele in the manner described in order to induce such stress on Michele so that she would do and pay anything in order for the calls to stop.

34. Synchrony's intrusion upon Michele's seclusion was highly offensive to

the reasonable person.

35. Synchrony's intrusion upon Michele's seclusion was oppressive and outrageous, and exceeded reasonable collection efforts. Synchrony's collection efforts were especially oppressive and unreasonable because the number of calls it placed to Michele's cellular phone and in a such a short period of time was vastly disproportionate to the debt amount allegedly owed by Michele.

36. Synchrony's conduct was especially unreasonable because it called relentlessly shortly after Michele had explained that she did not have money to pay —and would not have for some time—, expressly revoked consent to be called, and then promised she herself would call Synchrony when she was able to make a payment.

37. Upon information and belief, Synchrony has also called or attempted to call and text friends and family of Michele with the intention that they would communicate to Michele that Synchrony was attempting to collect a debt from her, causing Michele additional embarrassment and distress.

38. Upon information and belief, Synchrony called Michele and delivered prerecorded or artificial voice messages.

39. Each and every one of Synchrony's telephone calls caused Michele distraction and temporary loss of use of her telephone line.

40. Each and every one of Synchrony's telephone calls alerted people that

Michele was receiving an unusual amount of calls, embarrassing Michele.

41. Michele was out of work and struggling with her finances. Due to this, she has been under constant stress, and Synchrony's incessant calls not only added to Michele's stress, but further worsened her anxiety, stress, and frustration.

42. As a result of Synchrony's conduct, Michele has sustained actual damages including but not limited to, physical symptoms in the form of constant headaches and sleeplessness/trouble sleeping, emotional and mental pain, anguish, increased stress, frustration, anxiety, inconvenience, and embarrassment.

## COUNT I

### Violations of the TCPA, 47 U.S.C. §227

43. Michele incorporates the foregoing paragraphs as though the same were set forth at length herein.

44. Synchrony violated the TCPA. Defendant's violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions, Synchrony violated TCPA 47 U.S.C. §227 (b)(1)(A)(iii) which states in pertinent part, "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice

— to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call."

    b.  Within four years prior to the filing of this action, on multiple occasions Synchrony willfully and/or knowingly contacted Michele at her cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and, as such, Synchrony knowingly and/or willfully violated the TCPA.

45.    As a result of Synchrony's violations of 47 U.S.C. §227, Michele is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B). If the Court finds that Synchrony knowingly and/or willfully violated the TCPA, Michele is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).

## COUNT II

### Violations of the FCCPA, Fla. Stat. § 559.55 *et seq.*

46.    Michele incorporates the foregoing paragraphs as though the same were set forth at length herein.

47.    Synchrony violated §559.72 of the FCCPA. Synchrony's violations include, but are not limited to the following:

    a.  "Willfully communicat[ing] with the debtor or any member of her or his

family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. §559.72(7).

48. Synchrony willfully called Michele with such frequency and methodology as can reasonably be expected to abuse and harass Michele.

49. As a result of Synchrony's violations of Fla. Stat. §559.72, Michele is entitled to an award of actual damages and statutory damages of one thousand dollars ($1,000.00), for each and every violation, pursuant to Fla. Stat. §559.77(2). The Court may award additional statutory damages by considering the nature of Synchrony's noncompliance with §559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional. Section 559.77(2) expressly authorizes the Court to award Michele punitive damages.

## COUNT III

### Synchrony's Invasion of Michele's Privacy

50. Michele incorporates the foregoing paragraphs as though the same were set forth at length herein.

51. Restatement of the Law, Second, Torts, §652B defines intrusion upon seclusion as "[o]ne who intentionally intrudes . . . upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion

of privacy, if the intrusion would be highly offensive to a reasonable person".

52. Synchrony violated Michele's privacy. Synchrony's violations include, but are not limited to, the following:

    a. Synchrony intentionally intruded, physically or otherwise, upon Michele's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite Michele having requested that Synchrony cease making calls to her cellular phone.

    b. The number and frequency of the telephone calls to Michele by Synchrony constitute an intrusion on Michele's privacy and solitude.

    c. Synchrony's conduct would be highly offensive to a reasonable person as Michele received calls that caused distraction and temporary loss of use of her cellular telephone line, anxiety, annoyance and embarrassment.

    d. Synchrony's acts, as described above, were done intentionally with the purpose of abusing and harassing Michele to pay the alleged debt.

    e. Synchrony's conduct constitutes abuse and harassment and exceeded reasonable collection efforts.

53. As a result of Synchrony's violations of Michele's privacy, Synchrony is liable to Michele for actual damages. If the Court finds that the conduct is found to be egregious, Michele may recover punitive damages.

## TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38, Michele hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michele Shelnutt respectfully requests judgment be entered against Defendant Synchrony Bank, for the following:

A. Declaratory judgment that Synchrony violated the TCPA and FCCPA;

B. Statutory damages pursuant to 47 U.S.C. §§227(b)(3)(B), (C);

C. Actual, statutory and punitive damages pursuant to Fla. Stat. §559.77(2);

D. Actual and punitive damages for intrusion upon Michele's seclusion;

E. Attorneys' fees and court costs pursuant to Fla. Stat. §559.77(2);

F. Awarding Michele any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

Dated: March 27, 2020.                          Respectfully Submitted,

By: */s/ Santiago J Teran*
Santiago J Teran
FL #1018985
Price Law Group, APC
1001 N Federal Hwy, Ste 349
Hallandale, FL 33009
T: (818) 600-5586
F: (818) 600-5486
E: santiago@pricelawgroup.com
*Attorneys for Plaintiff*
*Michele Shelnutt*